UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH PROKOP, ALAN L. RODRIGUES and WESTON J. COOLIDGE,<br><br>Defendants. | Case No. 2:09-cr-00022-MMD-RJJ<br><br>ORDER |

Before this Court is the United States' Objections to Magistrate Judge's Discovery Ruling and Points and Authorities in Support Thereof (dkt. no. 142). The Court has reviewed Defendants' response (dkt. no. 145), Magistrate Judge Johnston's Order, the Indictment, multiple filings relating to the discovery issue presented in the United States' Objections, as well as the transcripts of proceedings before Magistrate Judge Johnston.

I. **BACKGROUND**

On January 1, 2009, Defendants were indicted with twenty-one (21) counts, including conspiracy to defraud the United States and aiding and abetting in the preparation of materially false income tax returns for third-party clients between 2001 and 2004. (Dkt. no. 1.) The allegations involve the sale of an Internet shopping website called Tax Break 2000 that Defendants allegedly fraudulently represented would allow customers to claim legitimate income tax credits and deductions under the Americans with Disabilities Act and the Internal Revenue Code.

Given the scope of discovery, the Magistrate Judge held regular status conferences. The government's attorneys first raised the issue of discovery relating to the IRS audits of customers who purchased Tax Break 2000 at a status conference held on August 13, 2009, but did so by way of a report on the general status of discovery. According to the government's counsel, "this was 20,000 customers were out there, thousands were likely audited via so-called correspondence audits where all they get is a letter in the mail saying, hey, we've determined MallForAll is not a good deduction, you need to file an amended return." (Dkt. no. 91 at 5:20-25.) In response to the Court's question about the nature of the "correspondence audits," the government represented that a "so-called no-change audit" means "clean bill of health." (*Id.* at 16:20-21.)

Approximately two months later, at the October 23, 2009, status conference, the government provided some additional information relating to the IRS audits. According to the government, there were approximately 22,000 taxpayers who filed returns with disabled access credit and some taxpayers filed multiple returns, which resulted in about 100,000 actual physical tax returns[1]. (Dkt. no. 92 at 7-8.) The IRS was "able to very easily look at results of those audits that took place in 2005 and later" and determined that of the 4,400 returns audited, 211 resulted in a "no-change." (*Id.* at 8:4-17.) The government represented that it was willing to provide the name of the taxpayer and any other identified information relating to the post-2004 audits. The government also informed the Court that Defendants wanted to assess whether they would like other information relating to the post-2004 audits (i.e., IRS transcripts and tax returns) and pulling such information may require more time, but the government did not raise any objection to providing such information. (*Id.* at 8-9.) The government represented that the parties conferred and Defendants were not certain whether the post-2004 audits represent a sufficient sample size or whether Defendants wanted the pre-2005 audit information. (*Id.* at 9.) The government explained that the IRS implemented a tracking

---

[1] The government corrected this estimate to reflect that the number of tax years is 65,000, not 100,000. (Dkt. no. 142 at 11.)

2

1 system for audits conducted after 2004 so retrieval of the audit information pre-2005 would involve IRS staff looking through the paper files for audit information.

At the March 31, 2010 status conference, the government represented that it had provided a list of the individuals whose returns were audited post-2004 and if the Defendants "wanted to see the actual audit file or wanted more information regarding those specific taxpayers, we would obviously work with the IRS to get that to the defense." (Dkt. no. 22:3-14.) Because it was apparent that not much progress had been made on the production of the IRS audit files and other discovery, the Court ordered the parties to submit their discovery disputes via motions.

The parties have had ample opportunity to brief the Court on their dispute relating to the IRS audit files. Magistrate Judge Johnston heard oral argument and allowed for more briefing per the parties' request. After additional briefings, the Judge granted Defendants' motion and ordered production of the no change audits. Magistrate Judge Johnston found that the government has possession, custody and control of the audit files and the audit files are material, and 26 U.S.C. § 6103 allows for disclosure here. The government challenges all three findings and argues that the Magistrate Judge's factual findings as to the scale of discovery are also clearly erroneous.

**II.    DISCUSSION**

   A.  Standard of Review

Magistrate judges are authorized to resolve pretrial matters subject to district court review under a "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). "A finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Ressam,* 593 F.3d 1095, 1118 (9th Cir.2010) (quotation omitted). Pretrial orders of a magistrate under 636(b)(1)(A) are not subject to *de novo* determination, and the reviewing court "may not simply substitute its judgment for that of the deciding court." *Grimes v. City & County of San Francisco,* 951 F.2d 236, 241 (9th Cir.1991).

B.  The Government has Possession, Custody and Control of the Audit Files.

The Magistrate Judge's finding that the government has possession, custody and control of the audit files is not clearly erroneous. The government argues that the Magistrate Judge erroneously concluded that the entire IRS is part of the prosecution team. However, this was not the Magistrate Judge's finding. The Magistrate Judge cites to the government's representation that the Criminal and Civil Investigation Division of the IRS have participated in the investigation and that the IRS is prepared to provide the 211 no-change audit results upon appropriate order by the Court to support his finding that the government has possession, custody and control of the audit files. The government also argues that only two civil IRS Revenue Agents have assisted in the investigation. However, in several status conferences before this discovery dispute arose the government did not claim it had no possession, custody or control over the audit files. To the contrary, the government repeatedly assured the Magistrate Judge that it was working with the IRS to determine the scope of the audit and the available information from the audit files. In fact, at the March 31, 2010, status conference, the government represented that if the Defendants "wanted to see the actual audit file or wanted more information regarding those specific taxpayers, we would obviously work with the IRS to get that to the defense." (Dkt. no. 22:3-14.) Clearly, the government has admitted that it has possession, custody and control over the audit files.

C.  The Audit Files Are Materials.

The Magistrate Judge's finding that the audit files are material is not clearly erroneous. In fact, the government has essentially conceded that the audit files are material in representing to Magistrate Judge Johnston that the parties were working on what part of the post-2004 audit files Defendants wanted to review and whether the post-2004 audit files represent a sufficient sample size. (Dkt. no. 92 at 8-9.) Moreover, the tax returns showing that the taxpayer claimed disabled tax credits and the "no change" status of the tax returns can be used to show that Defendants' product is not fraudulent, which is a central issue in this case. Magistrate Judge Johnston correctly noted that if "it

was determined in the audits that the credits and deductions were proper, then that customer was not defrauded by using Defendants' product because the IRS concluded that the credits and deductions were legitimate. Such evidence would be helpful to the defense, because it tends to show that Defendants' product is not fraudulent." (Dkt. no. 141 at 6:3-7). The government agrees that Defendants' state of mind is relevant to the fraud count. Defendants' counsel contended that their clients were aware of the IRS audits as they sold the products and claim that the IRS was not consistent and did not help them understand what the problem was. (Dkt. no. 93 at 25-26.) Defendants submitted a sworn declaration of a former employee of NADN relating to NADN's representation of two customers in connection with the IRS audit. (Dkt. no. 121-2.) The government also ignored the testimony of Defendants' expert witness as submitted via his affidavit that the information in the IRS audit files would be material to Defendants' defenses. (Dkt. no. 121-3.) The Magistrate Judge did not commit clear error in finding that the audit files are material.

        D.      <u>Disclosure of the Audit Files is Permissible under 26 U.S.C. § 6103</u>.

The Magistrate Judge found that the government can disclose the tax return information under an exemption to 26 U.S.C. § 6103's rule of nondisclosure, 26 U.S.C. § 6103(h)(4)(D). In doing so, the Magistrate Judge did not appear to evaluate the other provisions before reaching § 6103(h)(4)(D). The Magistrate Judge nevertheless did not commit clear error because disclosure of the audit files are permissible under 26 U.S.C. § 6103.

"Section 6103 of the Internal Revenue Code prohibits disclosure of returns and return information except as permitted therein." *Beresford v. United States*, 123 F.R.D. 232, 232 (E.D. Mich. 1988). Section 6103 "carries out two basic policy objectives." *Crown Cork & Seal Co., Inc. v. Pa. Human Relations Comm'n*, 463 F. Supp. 120, 122 (E.D. Pa. 1979). "First, it assures taxpayers that the returns and information which they supply to the government in connection with the assessment and payment of taxes will

not become public knowledge." *Id.* at 122-23. "Second, it provides for access to the information by persons who are deemed to have a material interest therein." *Id.* at 123.

"The statute contemplates a two-step analysis. First, it must be determined that the material sought is covered as 'return or return information' barred from disclosure by the statute." *Beresford*, 123 F.R.D. at 232. The taxpayer information at issue here meets the statutory definition of a "return." *See* 26 U.S.C. § 6103(a). Second, "[i]f it is within the statute's protection, then it must be determined whether any of the exemptions to the non-disclosure rule apply." *Beresford*, 123 F.R.D. at 232. Several exemptions apply here.

Subsection (h) governs disclosure of taxpayer information for the purposes of tax administration. Subsection (h)(2) describes when the Department of the Treasury can disclose taxpayer information to the Department of Justice. Subsection (h)(4) governs when the Department of Justice may disclose taxpayer information for the purposes of a judicial proceeding. Both subsections are at issue.

### 1. Section 6103(h)(2)

The Magistrate Judge's Order does not address Section (h)(2). Rather, it examines whether Fed. R. of Crim. P. 16(a)(1)(E) allows for disclosure of the taxpayer information. (Dkt. no. 141.) Federal Rule of Criminal Procedure 16(a)(1)(E) provides that the government must disclose items during discovery "if the item[s] [are] within the government's possession, custody, or control and . . . the item is material to preparing the defense." As the Order explains, these requirements are met here. However, 26 U.S.C. § 6103(h)(2) imposes additional requirements for disclosure in cases involving tax administration such as this one.

Section (h)(2) of the statute sets forth parameters for when tax return information may be disclosed by the Treasury Department to the Department of Justice:

> In a matter involving tax administration, a return or return information shall be open to inspection by or disclosure to officers and employees of the Department of Justice (including United States attorneys) personally and directly engaged in, and solely for their use in, any proceeding before a . . . Federal or State court, but only if—

* * *

    (B) the treatment of an item reflected on such return is or may be related to the resolution of an issue in the proceeding or investigation; or

    (C) such return or return information relates or may relate to a transactional relationship between a person who is or may be a party to the proceeding and the taxpayer which affects, or may affect, the resolution of an issue in such proceeding or investigation.

The government does not explain (beyond a mere conclusory statement and regurgitating the statute) *why* the Treasury Department cannot disclose information to the Department of Justice under § 6103(h)(B) or (C). The Department of the Treasury can disclose the information under either section. The tax returns contain items that are or may be related to the resolution of this proceeding: (1) information relating to the disabled tax credit; and (2) business expense deductions. Both of these items, coupled with the "no change" status of the tax return, are related to the central issue in this case and therefore can be disclosed under § 6103(h)(B). Further, the taxpayer information is discoverable under the plain language of subsection (C). The return information relates to a transactional relationship between Defendants and the taxpayers. And the information may affect the resolution of an issue in this case. Defendants are former employees or associates of NADN who are linked to the taxpayers through transactions and contracts relating to Defendants' allegedly fraudulent product. In fact, it is *because* of this transactional relationship between the taxpayers and Defendants that the government brought the charges in this case.

While the Magistrate Judge did not evaluate § 6103(h)(2), no clear error was committed. The Court rejects the government's conclusory argument that this section prohibits the Treasury Department from disclosing taxpayer information to the Department of Justice.

    **2.**    **Section 6103(h)(4)**

Section (h)(4) of the statute allows for disclosure of tax return information in judicial proceedings and administrative tax proceedings in certain circumstances:

A return or return information may be disclosed in a Federal or State judicial or administrative proceeding pertaining to tax administration, but only—

\* \* \*

    (B) if the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding;

    (C) if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding; or

    (D) to the extent required by order of a court pursuant to section 3500 of title 18, United States Code, or rule 16 of the Federal Rules of Criminal Procedure, such court being authorized in the issuance of such order to give due consideration to congressional policy favoring the confidentiality of returns and return information as set forth in this title.

The Magistrate Judge found that the audit files are discoverable under subsection (D). This subsection allows for disclosure so long as the court determines that the information can come within the government's possession and that the items are material to this case. The Magistrate Judge correctly found that the government had possession and control and the audit files are material under Fed. R. Crim. P. 16. Thus, the Magistrate Judge did not commit a clear error in determining that the audit files are discoverable under subsection (D).

The government argues that because the Magistrate Judge incorrectly applied Rule 16, section 6103 forbids disclosure. Such a circular self-serving argument would permit the government to withhold disclosure whenever it disagrees with the court's order to produce. Moreover, this Court finds that the audit files are also discoverable under subsections (B) and (C).

Subsection (B) requires that the information in the tax returns must be directly related to an issue in the proceedings. In *Shell Petroleum v. United States*, 46 Fed. Cl. 719, 726-725 (2000), the court concluded that certain tax credits were relevant to plaintiff Shell proving its case, and granted the plaintiff's motion to compel. Shell had to prove nothing more than a direct relationship between the desired tax credits and its claim for relief in order for the court to compel discovery. *Id.* at 724. Here, the audit files and the

no-change audits would not only be helpful to the defense, but are also directly related to an issue in this proceeding – whether Defendants' product is fraudulent – and therefore is exempt under subsection (B). Permitting disclosure under subsection (B) is also consistent with statutory policy, which favors "permitting disclosure to only those persons who have a legitimate need to know and can be made under a protective order limiting the disclosure for the purposes of this litigation." *Beresford*, 123 F.R.D. at 235.

The government argues that the taxpayer information at issue does not "directly relate" to a transactional relationship between Defendants and the taxpayer. It argues that the only taxpayer information "directly related" to the resolution of an issue in this case are the returns of the taxpayers listed in the Indictment, which have already been turned over. But this is an overly narrow application of the statute. Section 6103(h)(4)(C) "does not require that the disclosure be necessary to the resolution of the proceeding." *First W. Gov't Secs., Inc. v. United States*, 796 F.3d 356, 360 (10th Cir. 1986). Rather, to be exempt under the subsection, the disclosure need only "directly affect the resolution of *an issue* in the proceeding." *Id.* (emphasis added). Again, the taxpayer information here is directly related to the issue of whether or not Defendants' product is fraudulent.

Moreover, the audit files relate to the transactional relationship between the parties to this case and the NADN customers who were audited and are discoverable under subsection (C). In this regard, this case is similar to *Davidson v. Brady*, 559 F. Supp. 456, 461 (W.D. Mich. 1983). There, the court determined that certain federal tax return information was exempted from the general rule prohibiting disclosure under § 6103(h)(2)(C). *Id.* The taxpayer's information contained a statement of how much money the taxpayer owed the party to the proceeding. *Id.* This sufficed as return information directly relating to a transactional relationship between the taxpayer and the party to the proceeding for the *Davidson* court. *Id.*

Here, as with 26 U.S.C. § 6103(h)(2)(C), Defendants are former employees or associates of NADN who are linked to the taxpayers through transactions and contracts

relating to the sale of the allegedly fraudulent product. Whether or not Defendants fraudulently sold the product to NADN's customers is at issue in this case. As Judge Johnston states, the alleged fraud in this case "is not limited to the taxpayers listed in the indictment, rather, it states that Defendants' product was fraudulent. Therefore, audits of taxpayers who purchased the alleged fraudulent product are material to the defense." Section 6103(h)(2)(C) therefore permits disclosure.

The Court recognizes counsel for the government's concerns about potential civil criminal liability for disclosing taxpayer information in violation of § 6103. Such concerns are unfounded. The government cites to 26 U.S.C. § 7213 and § 743. However, § 7213 only applies to willful, unauthorized disclosures in violation of § 6103. *Id.* As the disclosures in this case are authorized by this Court and fall squarely within several exemptions to § 6103, the remedial actions described in § 7213 will not come to fruition. 26 U.S.C. § 7431 provides an exception for violations of § 6103 "with respect to any inspection or disclosure which results from a good faith, but erroneous, interpretation of section 6103." *Abelein*, 2001 WL 953797 at *1. Certainly being compelled by court order to disclose information, even if the decision to disclose is later overturned on appeal, falls within this "good faith" exemption.

E. The Scale of Discovery Should Be Evaluated.

The government argues that the Magistrate Judge's findings relating to the scale of the discovery are clearly erroneous. The Magistrate Judge's Order characterizes the dispute as involving the production of nearly 4,500 taxpayer audits. However, during status conferences, the government did explain that about 4,400 audits were conducted after 2004 using the IRS's new tracking system, and that significantly more audits were conducted pre-2005. The government now estimates that approximately 13,140 taxpayers may have used the product at issue for 2000 to 2004, which would require the IRS to retrieve and review 65,000 tax years to determine the number of audits conducted, who was audited and the results of the audits. (Dkt. no. 142 at 11.) The government argues that requiring the IRS personnel to review these 65,000 files would

be "an exceedingly expensive undertaking." (*Id*.) The government initially estimated that production of the pre-2005 audit files would involve five or ten IRS employees and they would need the equivalent of a week. (Dkt. no. 92 at 9-10.) In response to Defendants' first motion for discovery, the government projected that the cost of producing the pre-2005 audit files would be in excess of one million dollars. (Dkt. no. 96 at 13.) Moreover, that amount does not include the "cost of researching the location of the files, requesting the files, and having the Federal Records Center pull and ship the files." (*Id.* at 13:14-15.)

Where "the government has shown that complying with the [discovery] request would be unduly burdensome, it is incumbent on the district court to consider the government interests asserted in light of the materiality shown." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). The Court finds that the government has demonstrated that ordering production of the pre-2005 audit files would be unduly burdensome. While the audit files are material, Defendants will be given access to the post-2004 audit files, consisting of approximately 4,487 tax years, which should serve as a sufficient sample size for Defendants to rely on in crafting their defense.

The Magistrate Judge did not appear to consider the burden on the government of producing audit files of audits conducted before 2005. The Court therefore reverses the Magistrate Judge's Order with respect to production of the files of audits conducted before January 1, 2005.

**III.   CONCLUSION**

Accordingly, based on the foregoing and for good cause appearing,

IT IS HEREBY ORDERED that the Magistrate Judge's Order with respect to production of post-2004 audit files is affirmed and production of these 4,487 files shall be made within 20 days.

///

///

///

IT IS HEREBY ORDERED that the Magistrate Judge's Order with respect to production of files of audits conducted before 2004 is reversed.

DATED THIS 22nd day of June 2012.

_____
UNITED STATES DISTRICT JUDGE